Mathew K. Higbee, Esq.
Naomi M. Sarega, Esq.
Ryan E. Carreon, Esq.
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8352
(714) 597-6559 facsimile
Email: mhigbee@higbeeassociates.com

Attorney for Plaintiff,
*ADLIFE MARKETING &*
*COMMUNICATIONS CO. INC.,*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ADLIFE MARKETING & COMMUNICATIONS CO. INC., <br><br> Plaintiff, <br><br> v. <br><br> FAREWAY STORES, INC., <br><br> Defendant. | Case No.: 4:17-CV-04254-SLD-JEH <br><br> **OPPOSITION TO FAREWAY'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL DECLARATION** |

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Fareway's Motion for Leave to file the Supplemental Declaration of Robert M. Collins should be denied. Fareway's most recent filing is further evidence that it lacked diligence with regards to taking discovery in this case. In order to support its pending Motion to Compel, Fareway attempts to rely on the alleged declaration of a former Adlife officer Sharon Ferretti f/k/a Albrizio, which Fareway claims was only recently obtained because Fareway erroneously contends that Ms. Ferretti was not properly disclosed to Fareway during this litigation. In fact, Ms. Ferretti was identified as a person with discoverable information in Adlife's initial disclosures served on Fareway on August 3, 2018. Declaration of Ryan E. Carreon ("Carreon Decl.") ¶¶ 3-4, Exhibit A.

In addition, many of the documents provided by Adlife during the course of discovery directly identify Ms. Ferretti further putting Fareway on notice of her existence and her involvement in matters related to this litigation. Carreon Decl. ¶¶ 5-6. Indeed, even after Adlife's witnesses had been deposed in mid-September, Fareway had the time and information necessary to subpoena Ms. Ferretti for any relevant information prior to the discovery cutoff date. Instead, Fareway waited until over a month later, well after discovery had closed, to procure the declaration that it now purports to use as an excuse to extend the deadlines in this case. Indeed, it has been Fareway's lack of diligence in regards to discovery related matters that has led to this 11th hour filing, and not the discovery of new evidence that could not be obtained beforehand. Fareway should not be rewarded for its lack of diligence and therefore its Motion for Leave should be denied.

Furthermore, the instant Motion for Leave is heavily dependent on the credibility of the information contained in Ms. Ferretti's Declaration, much of

which has little to do with the Motions to Compel filed by the parties that it purports to supplement. Until recently, Ms. Ferretti was employed by Adlife as an officer of the company. Carreon Decl. ¶ 8. However, earlier this year Ms. Ferretti was fired from Adlife for stealing confidential financial documents among other things, and is currently involved in a contentious lawsuit with Adlife regarding her termination. Carreon Decl. ¶ 8.

On June 22, 2018, while employed by Adlife, Ms. Ferretti gave a deposition under penalty of perjury in a matter in which Adlife was the defendant. Carreon Decl. ¶ 9. During the deposition, Ms. Ferretti was question under oath about much of the same subject matter included in her declaration submitted with Fareway's Motion. Carreon Decl. ¶ 10. Unsurprisingly, the contents of Ms. Ferretti's current Declaration, which is executed under penalty of perjury, directly contradicts the sworn deposition testimony given by Ms. Ferretti in 2018, completely undermining the basis for Fareway's Motion for Leave.

Therefore, Fareway's Motion for Leave should be denied.

A.   **Factual Background**

On July 3, 2018, the parties jointly agreed on a discovery plan that would set a fact discovery cut off of June 21, 2019. Dkt. #16. Shortly thereafter, Adlife served its initial disclosures identifying, among other witnesses, Ms. Ferretti as a person with potentially discoverable information. Carreon Decl. ¶ 3. At the time of the disclosure, Ms. Ferretti was married to Adlife president Joel Albrizio and was therefore disclosed using her married name. Carreon Decl. ¶ 4.

Despite having nearly a full year to take discovery, Fareway served its first set of discovery requests on May 21, 2019, only 30 days before the discovery cut-off date. Carreon Decl. ¶ 13. The parties then mutually agreed to extend the scheduling order by 90 days with the promise that Fareway would attend a

mediation on or before September 1, 2019[1]. Dkt. #29. The new fact discovery cutoff was set for September 23, 2019. Carreon Decl. ¶ 14.

On August 27, 2019, Fareway noticed the depositions of Adlife, Joel Albrizio, and Douglas Fleurant to take place the second week of September. Carreon Decl. ¶ 15. Despite being identified on Adlife's initial disclosures, Fareway's counsel never inquired with Adlife's counsel as to Ms. Ferretti or her availability for deposition. Carreon Decl. ¶ 16. The depositions took place on September 10 and 11 respectively. Carreon Decl. ¶ 17.

During the depositions, Adlife's witnesses testified that Ms. Ferretti had been previously married to Adlife president Joel Albrizio, testified as to her role with Adlife when she was an officer, testified that during the pendency of the litigation she had been fired from Adlife for stealing confidential financial documents among other things, and also testified that she had recently sued Adlife in connection with her termination from the company. Carreon Decl. ¶ 18.

Despite being on notice for over a year that Ms. Ferretti possessed potentially discoverable information and despite having a detailed understanding of Ms. Ferretti's role at Adlife by virtue of the depositions, and being given all the information necessary during the depositions to be able to locate and subpoena Ms. Ferretti for information prior to the September 23 discovery cutoff, Fareway apparently sat on its druthers and did nothing. Carreon Decl. ¶ 19. It would not have been difficult for Fareway to locate and contact Ms. Ferretti and arrange for a deposition to take place prior to the September 23, discovery cut off. For example, the top Google search result for Ms. Ferretti under both her maiden and married names would direct a user to Ms. Ferretti's LinkedIn page where she could be

---

[1] As explained more fully in Adlife's Motion to Compel, Fareway did not respond to Adlife's repeated efforts to set a time and location for the mediation.

easily contacted. Furthermore, during the depositions of Adlife's witnesses, Fareway was informed of the litigation currently pending between Ms. Ferretti and Adlife and obtained from the testimony given all the information necessary to be able to locate the case on the Rhode Island state court docket, which would contain the contact information for Ms. Ferretti's attorneys. Carreon Decl. ¶¶ 20-21.

Instead of acting with diligence to try and conduct discovery related to Ms. Ferretti prior to the discovery cutoff date, Fareway apparently waited until mid-October to obtain an alleged Declaration signed by Ms. Ferretti. Unfortunately for Fareway, Ms. Ferretti's Declaration is rife with internal inconsistencies and directly contradicts sworn deposition testimony given by Ms. Ferretti in 2018. Of course, because Ms. Ferretti was fired for malfeasance, is currently involved in contentions litigation with Adlife and has ample incentive to try and damage Adlife in this litigation to suit her own purposes.

In the end, while the inconsistencies and apparently perjurious statements contained Ms. Ferretti's declaration are concerning, the timing of the declaration demonstrates that Fareway has lacked diligence with regards to discovery matters in this case. Rather than resort to an 11th hour filing, Fareway could have, and should have, sought and obtained information from Ms. Ferretti sooner and within the bounds of the Court's scheduling order rather than waiting until well after the discovery cutoff to act and then use that as an excuse to request yet a further extension of the deadlines to accommodate its apathetic approach.

Fareway's Motion for Leave must therefore be denied.

II. **MS. FERRETTI'S DECLARATION LACKS CREDIBILITY AND CONTRADICTS HER PRIOR SWORN TESTIMONY**

Fareway's Motion for Leave is heavily dependent on the veracity of a Declaration allegedly signed by Ms. Ferretti, a former officer of Adlife currently involved in contentious litigation with Adlife over the termination of her

employment ("Ferretti Decl.").

On June 22, 2018, Ms. Ferretti gave a deposition under penalty of perjury in a matter in which Adlife was the defendant ("Ferretti Deposition"). Carreon Decl. ¶ 9. During the deposition, Ms. Ferretti was question under oath about much of the same subject matter included in her declaration submitted with Fareway's Motion (Ferretti Decl."). Carreon Decl. ¶ 10. Unsurprisingly, the contents of Ms. Ferretti's Declaration, which is executed under penalty of perjury, directly contradicts the sworn deposition testimony given by Ms. Ferretti in 2018.

In the Declaration, Ms. Ferretti states unequivocally that during her tenure at Adlife she never observed Joel Albrizio pick up a camera or take any food photographs for Adlife at any location, and that he has never maintained a home studio. Ferretti Decl. ¶4. In contrast, in her 2018 deposition, Ms. Ferretti testified that on multiple occasions she visited Adlife's corporate photo studio and "I would be back there and Joel would be back there with the photographers and they would be shooting pictures." Ferretti Deposition p. 37, lines 24-25; p. 38, lines 1-25; p. 29, lines 1-25. In addition to observing Mr. Albrizio take photograph at Adlife's corporate photo studio, Ms. Ferretti also testified in her deposition that Mr. Albrizio maintained a number of cameras and lighting equipment for use at home. Ferretti Deposition p. 43, lines 11-25; p. 44, lines 1-12.

In the Declaration, Ms. Ferretti states that she has reviewed the spreadsheet identified as Exhibit "A" and that she unequivocally "can confirm" that Mr. Albrizio played no role whatsoever in the creation of any of those photographs[2]. Ferretti Decl. ¶4. In contrast, Ms. Ferretti testified in her deposition that as a

---

[2] Despite unequivocally stating the she is unequivocally able to confirm that the food photographs in Exhibit "A" were not created by Joel Albrizio, Ms. Ferretti contradicts herself later in the Declaration by stating that Adlife has "never maintained[] any record of the creation date, publication date, or identity of the photographers of any of the food photographs in Exhibit 'A.'" Ferretti Decl. ¶7.

graphic designer, she rarely crossed paths with the photography team. Ferretti Deposition p. 38, line 7-11. In addition, Ms. Ferretti testified that in general the graphics department would create a preliminary sketch of the food item, submit it to the kitchen or photography department and that "[w]e wouldn't really see it until we got proof of what the picture or image was at that time … usually a day or two later .. [s]o, you didn't really see, it was a completely different department separate from artists. So, we didn't really see what went on behind the scenes in a sense." Ferretti Deposition p. 38, line 12-25; p. 39, lines 1-4. In other words, it would be impossible for Ms. Ferretti to truthfully testify that she could confirm that none of the photographs in Exhibit "A" were created by Mr. Albrizio when she previously testified that she did rarely observed the actual photography process and that on the occasions she did recall observing the photography process she observed Mr. Albrizio directly participating.

In the Declaration, Ms. Ferretti states that it was "definitively determined" that Adlife does not own the photograph known as "BeefCheeseBurger003.jpg" which allegedly was part of Adlife's image database. Ferretti Decl. ¶6. Tellingly, Ms. Ferretti provides no details in her Declaration as to who she alleges is the actual owner of this photograph or how the determination of ownership was allegedly made. This is likely because in her sworn deposition, Ms. Ferretti testified that she was "not aware of an images that we possess that are not Adlife images," that in her 23 years at Adlife "[e]very single image that we have, we have created ourselves," and that she would "one hundred percent swear" that Adlife never put an image in its database that it bought or otherwise didn't own. Ferretti Deposition p. 78, lines 1-25; p. 79, lines 1-25; p. 80, lines 1-7. Furthermore, when asked how she would gather information to prove ownership of Adlife's images, Ms. Ferretti testified that she would have had to go to Adlife's CFO Douglas

Fleurant for that information "[b]ecause I didn't know." Ferretti Deposition p. 59, lines 2-8.

In the Declaration, Ferretti states that she has personal knowledge that Adlife employees were instructed to falsely name Mr. Albrizio on its registrations applications with the United States Copyright Office and that there allegedly exists a large number of emails "that pertained to the registration of copyrights by Adlife." Ferretti Decl. ¶¶8-9. Notably, Ms. Ferretti does not claim that she was copied on these emails nor does she identify how she knows of their existence or specifically whom they were allegedly sent to. In fact, in her deposition, Ms. Ferretti testified that she had no direct involvement with the preparation of the copyright applications at all. Ms. Ferretti testified in her deposition that, while she was generally aware of Adlife's registration of its image library "I haven't actually seen the copyright registrations." Ferretti Deposition p. 34, lines 18-24. In addition, when directly asked about her knowledge of the application process, Ms. Ferretti testified under oath that she "did not participate in any of that," that she had never seen the application materials, and was not consulted as to how the registration materials were going to be compiled. Ferretti Deposition p. 36, lines 16-25; p. 37, lines 1-16.

The above are just a selection of the several contradictory statements contained in Ms. Ferretti's sworn Declaration that cannot be squared with the statements made under oath in her 2018 deposition. In addition to what appears to be perjurious statements and glaring credibility problems from Ms. Ferretti, Fareway's counsel's continued failure to conduct discovery, despite a generous discovery schedule and extensions, should not be used as an excuse to extend discovery so Fareway can go on a fishing trip at the cost of more delays to Adlife and the court. Fareway's Motion for Leave should therefore be denied.

## III. CONCLUSION

Adlife respectfully requests that Fareway' Motion for Leave to File a Supplemental Declaration of Robert M. Collins be denied.

Dated: October 25, 2019                                    Respectfully submitted,

/s/ *Mathew K. Higbee*
Mathew K. Higbee
mhigbee@higbeeassociates.com
Naomi M. Sarega, Esq.
nsarega@higbeeassociates.com
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8349
(714) 597-6559 facsimile

# CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2019, I electronically filed this

**OPPOSITION TO FAREWAY'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION OF ROBERT M. COLLINS; DECLARATION OF RYAN E. CARREON**

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Siobhan M. Murphy
LEWIS BRISBOIS BISGAARD & SMITH, LLP.
550 West Adams Street, Suite 300
Chicago, IL 60661
Siobhan.murphy@lewisbrisbois.com

Daniel C. DeCarlo
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071
213-250-1800
dan.decarlo@lewisbrisbois.com

Robert M. Collins
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071
213-250-1800
robert.collins@lewisbrisbois.com

*Counsel for Defendant,*
*FAREWAY STORES, INC.*

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on October 25, 2019, at Santa Ana, California.

                                                           **/s/ *Mathew K. Higbee***
                                                           Mathew K. Higbee